THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14

| In the Matter of the Application of LUFTHANSA TECHNIK AG, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure, of Respondent PANASONIC AVIONICS CORPORATION, for Use in Foreign Proceedings, with ASTRONICS ADVANCED ELECTRONIC SYSTEMS CORP. as Intervenor. | CASE NO. C17-1453-JCC<br><br>ORDER |
|---|---|

15   Petitioner Lufthansa Technik AG's ("Lufthansa") recently moved to enforce (Dkt. No.

16 265) portions of prior orders compelling discovery from Intervenor Astronics Advanced

17 Electronic Systems Corp. ("AES") and to seal (Dkt. No. 264).[1] Following *in camera* review and

18 supplemental briefing, (*see* Dkt. Nos. 287, 293, 295, 300), the Court GRANTS in part and

19 DENIES in part Lufthansa's motion to enforce (Dkt. No. 265) and GRANTS its motion to seal

20 (Dkt. No. 264) for the reasons explained herein.[2]

21   In response to Lufthansa's discovery petition in support of foreign litigation (and

22

23 [1] AES also moves to strike portions of Lufthansa's reply brief in support of its motion to enforce.

24 (*See* Dkt. No. 286.) As the Court did not rely on any of the information subject to AES's motion in reaching the ruling below, the motion to strike (Dkt. No. 286) is DENIED as moot.

25 [2] The Court finds oral argument unnecessary in reaching a ruling on each motion. Further, given the lengthy motion practice which has already transpired between these parties, the Court

26 dispatches with a recitation of background facts.

resulting subpoena), the Court previously ordered AES to, among other things, provide Lufthansa with an updated master parts list ("MPL") and engage in a comprehensive ESI search for meeting protocol documentation. (*See* Dkt. Nos. 224 at 2–3, 254 at 1–2.) In now moving to enforce these orders (and for sanctions), Lufthansa asserts (1) the MPL remains deficient, (2) cost information which AES previously provided for certain part sales is incorrect, and (3) AES inappropriately withheld from production certain meeting protocol documentation. (*See* Dkt. Nos. 265 at 6–14, 297 at 2–9.) Based on these deficiencies, Lufthansa asks the Court to compel further production from AES and to award Lufthansa attorney fees in bringing this motion. (*Id.* at 9–14.) Separately, Lufthansa moves to seal its motion to enforce. (Dkt. No. 264.)

**1.      AES Must Produce Technical Documents but MPL Revisions are not Required**

Lufthansa contends that the current version of the MPL is deficient because it (a) excludes certain DC parts capable of use in EmPower system(s) (which are potentially infringing), (b) lacks an accurate description of the systems for which certain parts were used, and (c) fails to provide necessary technical information about certain parts. (Dkt. No. 265 at 5–7, 12–13.) The first two critiques are not well taken. The final one is.

According to the discovery rules, the producing party must produce documents "as they are kept in the normal course of business" or "organize and label them to correspond to the categories in the request [for production]." Fed. R. Civ. P. 34(b)(2)(E). The requirement to organize and label documents is not without limits, though. *See MGA Ent., Inc. v. Natl. Prods. Ltd.*, 2012 WL 12884021, slip op. at 4 (C.D. Cal. 2012) (describing a party's obligation to organize records when the "system used by the producing party [in the ordinary course of business] 'is so deficient as to undermine the usefulness of production'") (quoting *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 336 n.2 (N.D.N.Y. 2008); *see also F.T.C. v. Johnson*, 2012 WL 2138108, slip op. at 2 (D. Nev. 2012) (describing Rule 34's limitations in mandating the organization and labeling of documents collected solely for production purposes).

Because AES did not maintain a comprehensive parts list in the manner Lufthansa

sought, AES compiled the MPL. It then repeatedly revised the MPL, based on Lufthansa's requests and the Court's orders. (*See, e.g.*, Dkt. Nos. 152 at 3, 163 at 2, 224 at 2.) This has resulted in significant work for AES. (*See, e.g.*, Dkt. Nos. 162 at 2–4, 183 at 4, 197 at 2–3, 218 at 4–5, 223 at 1–6.) Commanding AES to perform additional work, given the efforts already taken to gather information in a form not ordinarily kept, strains the boundaries of what the rules require, particularly given the fact that Lufthansa is, largely, speculating that additional supplementation is required.

This does not apply to the technical information Lufthansa seeks. AES does not suggest, for instance, that this information is not available in its native (or ESI) format within AES's records. (*See* Dkt. No. 277 at 9.) Therefore, it would seem that the burden of production is low. Instead, AES suggests the information is of little value to Lufthansa because it would not (on its own) be sufficient to determine a part's AC versus DC compatibility (which is at the heart of the parties' discovery dispute). (*Id.*) Fundamentally, it is AES's responsibility to produce records— not explain them. The compatibility determination is for Lufthansa to make. Therefore, absent applicable attorney-client or work product protections, AES must produce whatever technical documents Lufthansa seeks, so long as they are available to AES and have not otherwise been produced in this or the European proceedings.

**2.    AES Need Not Reconcile Cost Information Between Productions**

Lufthansa next contends that the cost information for AES's sales has varied by production. In other words, cost information for the same part sale was higher in an earlier production than in a later production. (Dkt. No. 265 at 7–8, 13–14.) Therefore, the earlier production must be incorrect, says Lufthansa, and the Court should compel the production of corrected cost information. (*Id.*) The Court disagrees. As AES explains, it does not track actual costs for individual parts. Rather, it approximates those costs. (*See* Dkt. No. 277 at 10.) To the extent those approximations have changed, they are reflected in the final cost estimate, which are included in AES's records as kept in the ordinary course of business, which it already produced.

1  (*See* Dkt. No. 275 at 2–7.) To the extent cost estimates vary across productions, AES has no

2  obligation to reconcile the two, at least for purposes of Rule 34. It is Lufthansa's burden to

3  establish with the European courts which cost is more representative in determining damages.

4  This Court need not assist Lufthansa in making this determination.

5  **3.     AES's Meeting Protocol Production is Adequate**

6          In moving to enforce, Lufthansa suspected that AES's meeting protocol privilege log was

7  overbroad. (*See* Dkt. No. 265 at 4–5.) It asked that the Court perform an *in camera* review. (*See*

8  *id.* at 12.) In response, the Court reviewed a sample of AES's log (including the underlying

9  documents) and found that the vast majority comported with attorney-client and work-product

10 protections. (*See* Dkt. Nos. 293 at 1–2, 295 at 1–2.) And to the extent the Court did find

11 deviations, it ordered AES to produce those documents, along with others that similarly lacked

12 protection(s), as well as a revised privilege log. (*Id.*) However, the Court declined to engage in

13 an *in camera* review of <u>all</u> documents withheld, given the largely compliant nature of AES's log.

14 (*Id.*) The Court then afforded Lufthansa an opportunity to revise its motion to enforce based on

15 AES's additional production and amended privilege log. (*See* Dkt. No. 295 at 2.)

16         Lufthansa now asks the Court to compel production of additional meeting protocol-

17 related documents. (*See* Dkt. No. 297.) Lufthansa speculates that, based on the descriptions in

18 the revised privilege log, certain documents could not possibly be subject to attorney-client or

19 work-product protections. (*Id.* at 4–5.) But as AES explains, and the Court agrees, AES already

20 produced non-privileged versions of some of those documents and mere speculation that the

21 remainder are not protected is insufficient to trigger another round of production or further *in*

22 *camera* review. (*See* Dkt. No. 301 at 2–5.)

23 **4.     Attorney Fees and/or Other Sanctions are Unwarranted**

24         Lufthansa seeks attorney fees and/or sanctions in moving to enforce. (*See* Dkt. No. 265 at

25 14.) Such an award requires a showing, through clear and convincing evidence, that AES

26 violated the Court's specific and definite order. *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239

(9th Cir. 1999). Because the Court finds that Lufthansa's present request to enforce is largely without merit (and there is no existing order requiring production of the technical documents discussed above), there is no basis for the sanctions Lufthansa now seeks.

**5.    Motion to Seal**

Finally, Lufthansa moves to maintain under seal unredacted versions of its motion to enforce and certain supporting declarations and exhibits. (*See* Dkt. No. 264.) AES does not oppose. "[T]here is a strong presumption of public access to [the Court's] files." W.D. Wash. Local Civ. R. 5(g)(3). To overcome it, in general, a party must show "good cause" for sealing a document attached to a non-dispositive motion and "compelling reasons" to seal a document attached to a dispositive motion. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178–81 (9th Cir. 2006). The redacted portions of Lufthansa's motion to enforce, along with supporting declarations and exhibits, contain information designated for "attorney's eyes only." They contain proprietary information falling within the scope of the protective orders entered in this case. Thus, there exists a compelling reason to seal the unredacted versions of its motion to enforce and certain supporting declarations and exhibits and that reason overcomes the presumption of public access.

For the reasons described above, Lufthansa's motion to enforce (Dkt. No. 265) is GRANTED in part and DENIED in part, and its motion to seal (Dkt. No. 264) is GRANTED. AES is ORDERED to produce the technical information Lufthansa seeks, subject to attorney-client privilege and work-product protections, in the form which AES normally keeps such information (or in a readily searchable ESI format). The Clerk is DIRECTED to maintain Docket Numbers 265–67 under seal.

//
//
//
//

ORDER
C17-1453-JCC
PAGE - 5

DATED this 28th day of October 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE